OPINION
{¶ 1} Appellant, Dawn P., appeals the decision of the Butler County Court of Common Pleas, Juvenile Division, granting unsupervised visitation to appellee, Christopher P., with regard to their two children, but ordering that her visitation with the children be supervised. We affirm.
 {¶ 2} The parties have two children, a son born in August 1996, and a daughter born in May 1998. The parties were married but divorced in 2004. In 2002, Dawn briefly went to San Francisco twice before permanently moving there with her dog in August 2002. Apparently, Dawn moved to San Francisco to follow a Jello Biafra, the former singer of a band known as Dead Kennedys. Chris and the children stayed in Hamilton, Ohio. On May 16, 2003, Chris was arrested after drugs and drug paraphernalia were found in his residence. Although Dawn was in Hamilton visiting the children the day Chris was arrested, she went back to San Francisco a few days later without them. Butler County Children Services Board ("BCCSB") filed a complaint alleging that the children were dependent. With Dawn's agreement, the children were placed with their maternal grandmother.
 {¶ 3} Chris was convicted of possession of heroin and illegal use or possession of drug paraphernalia, sentenced to four months in jail and six months in River City Correction Center, a substance abuse treatment facility, and released in April 2004. During his incarceration, the trial court granted temporary custody of the children to their maternal grandmother, and supervised visitation to Dawn. Following his release, Chris was granted supervised visitation. In August 2004, Dawn, Chris, and the grandmother each moved for legal custody of the children. On March 11, 2005, the trial court held a custody hearing. Although she knew about the hearing for several months, Dawn did not attend. The record shows that out of seven hearings before the trial court, including the custody hearing, Dawn only attended two of them.
 {¶ 4} On March 1, 2004, finding it to be in the children's best interest, the trial court granted legal custody of the children to the maternal grandmother, unsupervised visitation to Chris "at the discretion of the custodian," and supervised visitation to Dawn. This appeal follows in which Dawn challenges the trial court's visitation order in three assignments of error. Dawn does not appeal the trial court's legal custody order.
 {¶ 5} In her first assignment of error, Dawn argues that the trial court abused its discretion by granting unsupervised visitation to Chris, especially in light of his extensive criminal record and drug convictions.
 {¶ 6} The granting of visitation rights is governed by R.C.3109.051. An appellate court will not reverse a trial court's determination as to visitation issues absent an abuse of discretion. In re McCaleb, Butler App. No. CA2003-01-012, 2003-Ohio-4333, ¶ 5. More than an error of law or judgment, an abuse of discretion implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. The trial court's discretion must be exercised in a manner which protects the best interest of the child. See Weaver v. Weaver (Mar. 6, 2000), Warren App. No. CA99-02-022. In determining visitation which is in the best interest of the child, the trial court must consider the factors listed in R.C. 3109.051(D). Id.
 {¶ 7} It is undisputed that Chris has an extensive criminal record and that he was convicted on drug charges following his arrest and the placement of the children with the maternal grandmother in May 2003. His criminal record includes convictions for illegal use of a minor in nudity-oriented material and contributing to the unruliness of minor children in 2002, and intimidation of a witness. Chris explained to the trial court the basis for many of his criminal convictions. For example, he explained that the convictions for illegal use of a minor and contributing to the unruliness of a minor were based on one incident at his home during which pictures were taken of a female minor's chest and minors holding bottles of alcohol. Chris denied taking the pictures and stated they were taken when a 19-year-old neighbor he was helping, threw a party at Chris' house. It is not clear whether Chris was present when the pictures were taken. Chris stated the conviction for illegal use of a minor was for having the undeveloped roll of film at his house. Following those convictions, Chris completed a sex offender aftercare program. Chris also testified that following a domestic violence incident during which he punched and cracked the windshield of a car, he attended anger management classes.
 {¶ 8} Chris admitted using several drugs in the past, including marijuana, amphetamines, cocaine, and heroin. According to Chris, "most of it happened all in one time." Chris testified that he was clean, that he was attending Alcoholics Anonymous meetings since his release from River City, and that since his release he has never violated probation or tested positive on drug tests. Chris also testified that he attended but never completed two methadone programs. Chris admitted relapsing after both programs. During the custody hearing, there was also testimony he had completed a drug and alcohol assessment as well as a psychological evaluation.
 {¶ 9} Chris testified he has been working as a robotics engineer for a company since the day after he was released from River City Correction Center. He also testified that he sees the children as often as possible, usually every three to four days, that he pays child support and insurance for them, and that he has complied with every order of the trial court or request from BCCSB.
 {¶ 10} The maternal grandmother testified that Chris sees his children at least once a week and goes to soccer games; that if he cannot see them, he calls them; that he works very hard and pays his child support obligation; and that the children love him. The grandmother has never observed inappropriate actions by Chris during his visitation. Even while he was incarcerated, Chris stayed in touch with the children by phone or with visits. The grandmother testified that even though she knows about his criminal record and substance abuse problem, she is comfortable in allowing unsupervised visitation between Chris and the children as long as Chris remains sober. The grandmother told the trial court that she knows Chris well enough that she would know whether he could take care of the children during his visitation. The grandmother stated that if she was concerned about the children's well-being, she would not allow Chris to have unsupervised visitation.
 {¶ 11} At the end of the custody hearing, the trial court acknowledged having concerns about Chris' criminal record and substance abuse problem: "and grandmother has to have concerns about the father, and they have to remain. * * * Yeah, he's a * * * hard worker but he's got * * * drug issues and as a custodian you're going to have to make that decision about what his contact will be. I'm going to order visitation unsupervised at your discretion[.] I mean, you're responsible for the kids from here on out. * * * [W]hen you leave here today in your mind [you're] saying to these kids * * * they're mine, I'm going to be responsible for them, I'm going to care for them, and that's the way it is and he has to understand that. * * *
 {¶ 12} "So you make the decision when he takes the kids away you have to feel very comfortable[.] Whatever it takes for you to feel comfortable. If you want to have him go back for drug screens, [that's] your choice."
 {¶ 13} As the foregoing shows, the trial court at the hearing strongly emphasized the fact that the maternal grandmother was now the legal custodian of the children and that she could allow unsupervised visitation with Chris only if she was truly comfortable with the idea, and completely satisfied with Chris' conduct. In its judgment entry, the trial court likewise clearly and unequivocally granted unsupervised visitation to Chris at the sole discretion of the maternal grandmother. In light of the foregoing and after a thorough review of the record, we cannot say that the trial court abused its discretion by granting conditional unsupervised visitation to Chris. Dawn's first assignment of error is overruled.
 {¶ 14} In her second assignment of error, Dawn argues that the trial court abused its discretion by requiring that her visitation with the children be supervised.[1]
 {¶ 15} Although she attended only two hearings, Dawn has always, throughout the proceedings, stated her desire to be with her children. However, actions sometimes speak louder than words. The record shows that after she moved to San Francisco and until the custody hearing, Dawn did not call her children regularly, or called them when they were already in bed; was more consumed and concerned with the divorce than the children; did not regularly pay child support to the maternal grandmother; did not have stable employment or housing; and missed a scheduled psychological evaluation in Butler County because her alarm did not go off (she was in Butler County at the time). Before the custody hearing, the trial court twice refused to address the issue of Dawn's supervised visitation because "we don't really know her at this point * * * I don't have any trust in her at this point. * * * [S]he flies in and flies out, so her * * * visitations will remain supervised. I'm not concerned about the kids disappearing with the father."
 {¶ 16} It is undisputed that the trial court's decision to grant supervised visitation to Dawn was based in great part upon the maternal grandmother's strong concern, throughout the proceedings, that if given unsupervised visitation, Dawn would take the children to California. Before the custody hearing, Dawn had threatened to come to Ohio to take the children with her. As noted earlier, Dawn did not have stable employment or housing. Those concerns and issues were still present at the custody hearing.
 {¶ 17} During that hearing, the maternal grandmother testified how Dawn had threatened her "that if [Dawn] ever got [the children] we'd never see them again." The grandmother testified how at one point she could not get a hold of Dawn. Although she now had a cellular phone number for Dawn, the grandmother did not know Dawn's current address. At the beginning of the hearing, Dawn's attorney admitted that she had talked to Dawn the day before for the first time in two months, and that she had obtained Dawn's phone number from BCCSB because she did not know how to reach Dawn. Dawn's attorney explained that Dawn could not attend the custody hearing because she had tried to commit suicide three weeks earlier and had incurred expenses of $2,400 in moving to a new residence. Dawn's own grandmother testified how Dawn called her in an attempt to talk to her children before she would commit suicide. Because they were in school, Dawn was unable to talk to the children.
 {¶ 18} The trial court refused to grant unsupervised visitation to Dawn before the custody hearing because of a lack of information about her. At the custody hearing, there was testimony that Dawn was again unemployed and not paying child support, that Dawn had failed to complete therapy and the BCCSB case plan and to take the psychological evaluation required by the trial court, and that although there was an agreement between the parties that Dawn would call the children twice a week, she did not call them regularly. Although the maternal grandmother believed that Dawn loved her children and would not hurt them intentionally, and wished for more contact between Dawn and the children, she was also adamant that the visitation should be supervised. Because Dawn did not attend the hearing, there was no evidence presented at the hearing to alleviate the grandmother's concern regarding unsupervised visitation to Dawn.
 {¶ 19} At the end of the custody hearing, the trial court stated that "abandonment * * * fits [Dawn] very well in this case. She's abandoned these kids for some pursuit of some kind of a * * * dream or mirage or something in her dream about what's going on out that way but I guess it bothered me when I saw the social summary * * * [that] she's consumed since September 16th about this divorce and an appeal. I wish she was consumed about these kids. Talking to these kids yesterday, she's * * * abandoned them in their * * * eyes because they know who she is. They love her but as I said she was the last person in line they'd want to be with as far as live with because * * * she's been out of their life a significant period of time."
 {¶ 20} Upon thoroughly reviewing the entire record, and in light of the foregoing, we cannot say that the trial court's decision to grant supervised visitation to Dawn was so unreasonable, unconscionable, or arbitrary that it was an abuse of discretion. The trial court therefore did not err by ordering that visitation with Dawn be supervised. Dawn's second assignment of error is overruled.
 {¶ 21} In her third assignment of error, Dawn argues that the trial court's visitation order was against the manifest weight of the evidence.
 {¶ 22} Judgments supported by some competent, credible evidence will not be reversed by a reviewing court as being against the manifest weight of the evidence. See C.E. Morris Co.v. Foley Constr. Co. (1978), 54 Ohio St.2d 279. "Before an appellate court will reverse a judgment as being against the manifest weight of the evidence, the court must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice." In re J.F., Cuyahoga App. No. 85242, 2005-Ohio-4816, ¶ 10. "[T]he assessment of credibility is a matter which lies within the sound discretion of the trier of fact, and an appellate court will not reverse that assessment unless the testimony in question is completely lacking in credibility." Id. at ¶ 11.
 {¶ 23} In support of her claim that the visitation order is contrary to the manifest weight of the evidence, Dawn incorporates the arguments she made in support of her first and second assignments of error. Upon thoroughly reviewing the record, and incorporating our resolution of Dawn's first and second assignments of error under this assignment of error, we find that competent credible evidence supports the trial court's visitation order. We cannot say that the trial court clearly lost its way and created a manifest miscarriage of justice when it granted unsupervised visitation to Chris at the discretion of the maternal grandmother and supervised visitation to Dawn. Dawn's third assignment of error is overruled.
 {¶ 24} Judgment affirmed.
Walsh, P.J., and Bressler, J., concur.
[1] We decline to address Dawn's argument that the trial court violated her constitutional rights by ordering that her visitation with the children be supervised. It is rudimentary that questions neither presented to nor passed upon by the trial court will not be ruled upon by this court. See In re Adoptionof McDermitt (1980), 63 Ohio St.2d 301.