[Cite as *In re A.B.*, 2019-Ohio-3537.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


IN RE: :

    A.B. : CASE NO. CA2019-01-005

: O P I N I O N
9/3/2019

:

:


APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 2017JC04983


D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for appellee

Kenneth M. Miller, 717 West Plane Street, P.O. Box 378, Bethel, Ohio 45106, for appellee father

Dever Law Firm, Scott A. Hoberg, 9146 Cincinnati Columbus Road, West Chester, Ohio 45069, for appellant

CASA for Clermont Kids, Nathan Bell, 2339 Clermont Center Drive, Batavia, Ohio 45103, guardian ad litem


    **RINGLAND, P.J.**

    {¶ 1} Appellant, Kylee Bowling ("Mother"), appeals the decision of the Clermont County Court of Common Pleas, Juvenile Division, denying her motion for additional parenting time. For the reasons outlined below, we affirm.

{¶ 2} Mother and Colton Brandenburg ("Father") are the parents of A.B., a girl born in July 2016. Initially, Mother was the sole caretaker and provider for A.B. and her twin sister. However, when the children reached six months old, Father began visiting with them and ultimately "served [Mother] with DNA test papers" to establish his paternity of the children. Thereafter, Father began exercising regular parenting time with A.B. and her sister.

{¶ 3} In the early morning hours of March 24, 2017, Mother discovered blood in A.B.'s diaper. According to Mother, she had dropped the children off at her boyfriend's parent's home on her way to work on March 23, 2017. Aside from five hours in which the children were with Father, the children stayed at Mother's boyfriend's parent's home until Mother picked them up around midnight. Upon discovering the blood in the baby's diaper, Mother took A.B. to the hospital. After A.B. was examined, it was determined that she had suffered a tear to her hymen, which the hospital suspected was a result of sexual abuse. Because the hospital suspected A.B. had been abused, it notified Clermont County Children's Protective Services ("CPS") and the Clermont County Sherriff's office. The hospital then completed a rape kit on A.B., which revealed the presence of a single sperm cell in A.B.'s mouth.

{¶ 4} In June 2017 Father filed a motion to establish parental rights and responsibilities and a motion for temporary emergency custody. Two days later, CPS filed a complaint based upon the sexual abuse allegations. The complaint alleged that A.B. was abused, and further indicated that because no perpetrator had been identified and A.B. was with both parents on the date the injury occurred, CPS was concerned for A.B.'s safety. Accordingly, CPS requested the court to inquire into the alleged abuse and to either grant temporary custody of A.B. to CPS or to grant temporary custody to Mother with protective supervision.

{¶ 5} Thereafter, Father withdrew his motion for temporary emergency custody and

A.B. was adjudicated abused. As a result, CPS received temporary custody of A.B. and she was placed in the care of Mother's great aunt and uncle. A case plan was then established, which described the concerns Mother and Father needed to address in order to reunify with A.B.

{¶ 6} In October 2017 a hearing was held before a magistrate regarding Father's June 2017 motion to establish parental rights and responsibilities. At the hearing, the investigator assigned to A.B.'s case testified that his investigation into the sexual assault of A.B. remained open but was in inactive status. The investigator described his investigation into the incident, and indicated he was able to exclude Father as a suspect, but still had "a lot of concerns" with excluding Mother. According to the investigator, he had interviewed Mother extensively, and determined she was the only individual alone with A.B. on the night of the incident. He further testified that while he found Father credible, he had concerns with Mother's credibility.

{¶ 7} A.B.'s guardian ad litem also testified at trial and recommended that A.B. be placed with Father. According to the guardian ad litem, she had no apprehensions regarding Father, but was concerned with Mother's history of mental illness, the investigator's inability to exclude Mother as a suspect in the criminal case, and certain evidence that Mother favored A.B.'s sister over A.B.

{¶ 8} The caseworker assigned to A.B.'s case also testified at trial, and recommended granting custody of A.B to Father. Specifically, the caseworker noted that her recommendation was based, in part, on the inconsistencies in the criminal case with Mother.

{¶ 9} After trial, the magistrate found that it was in the best interest of A.B. to be in the legal custody of Father, subject to protective supervision by CPS. The magistrate further ordered CPS to provide Mother with substantial contact with A.B. and ordered Father to cooperate with Mother's contact with the children. Mother objected to the magistrate's

decision. After a hearing, the juvenile court issued a decision and judgment entry overruling Mother's objections and adopting the magistrate's decision. Mother did not appeal the juvenile court's decision.

{¶ 10} Thereafter, CPS filed a "motion to terminate protective supervision and maintain custody with [Father]." Mother then filed a motion for additional parenting time. In her motion, Mother argued she had substantially completed all aspects of her case plan goals and that it was in A.B.'s best interest to have additional parenting time with Mother. In August 2018, a hearing was held before a magistrate regarding the two motions.

{¶ 11} At the hearing, Mother testified that she had supervised visitation with A.B. a "couple days a week" for two or three hours, but she feels like, as A.B.'s mother, "[she] deserve[s] just as much time as [Father] has with [A.B.]" Mother further indicated she has asked for more time and that Father was agreeable to her request, but "sometimes it just doesn't line up with everyone's schedules." Mother requested to have A.B. fifty percent of the time and proposed a schedule where she would assist in providing transportation. However, on cross-examination, Mother admitted that she did not have a driver's license and relied on friends to go to and from her place of employment. In order to exercise her parenting time, Mother testified she would drive to visit A.B., despite not having a valid license, which had already resulted in two citations for driving under suspension, one of which was pending at the time of the hearing.

{¶ 12} Mother also indicated that she was unsure what caused CPS to recommend supervised visitation and confirmed she had not followed up with the police officers since she was last in court because she "didn't feel [she] needed to." Mother then testified she was aware she had supervised visitation because Father was cleared by the police and she was not.

{¶ 13} In addition to Mother, A.B.'s caseworker also testified at the hearing. According

to the caseworker, although Mother had completed several of her case plan services, she remained of the opinion that Mother's visitation should be supervised. The caseworker further testified that in order for CPS to remove its recommendation of supervised visitation, Mother would need to be cleared as a suspect in the criminal investigation of A.B.'s sexual abuse.

{¶ 14} In light of the evidence presented at the hearing, the magistrate granted CPS's motion, and terminated the prior order of protective supervision. The magistrate then denied Mother's motion and ordered that visitation between Mother and A.B. was to remain supervised and occur at times agreed upon by the parties. The magistrate further ordered that Father was to assist Mother with transportation for one visit per week.

{¶ 15} Thereafter, Mother requested findings of fact and conclusions of law regarding the decision on her motion for additional parenting time. The magistrate issued the requested findings of fact and conclusions of law, and Mother filed objections to the magistrate's decision shortly thereafter. After a hearing, the juvenile court overruled Mother's objections and adopted the magistrate's decision.

{¶ 16} Mother now appeals, raising one assignment of error for our review.

{¶ 17} Assignment of Error No. 1:

{¶ 18} IN A DEPENDENCY CASE, THE TRIAL COURT ERRED IN ITS DECISION AND ORDER REQUIRING MOTHER'S VISITATION TO BE SUPERVISED IN GRANTING LEGAL CUSTODY TO FATHER.

{¶ 19} Mother argues the juvenile court abused its discretion when it granted legal custody to Father and restricted Mother's visitation, despite evidence that she completed her case plan services. Mother further claims "the legal custody proceeding failed to demonstrate that restricting Mother's visitation while granting legal custody to Father was in the child's best interest."

{¶ 20} The granting of visitation rights is governed by R.C. 3109.051. The only restriction placed on the trial court by this provision is that a visitation order must be "just and reasonable." R.C. 3109.051(A). Thus, the trial court has broad discretion in determining matters related to visitation and an appellate court will not reverse a trial court's determination regarding visitation issues absent an abuse of discretion. *Appleby v. Appleby*, 24 Ohio St. 3d 39, 41 (1986); *In re L.P.*, 12th Dist. Butler No. CA2005-04-089, 2006-Ohio-745, ¶ 6. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 21} In considering modification of visitation rights, the trial court must consider the factors enumerated in R.C. 3109.051(D), which include: prior interrelationships with parents and relatives; the geographical distance between parents; the available time of both the child and parents; age of the child; child's adjustment to home, school and community; wishes and concerns of the child; health and safety of the child; child's time with other siblings; mental and physical health of all parties; each parent's willingness to reschedule missed parenting time; whether the residential parent has denied the other parent's rights to parenting time; whether either parent is establishing a residence outside the state; and any other factor in the best interest of the child.

{¶ 22} In the instant matter, we find the juvenile court did not abuse its discretion in denying Mother's motion for additional unsupervised parenting time. In its decision, the juvenile court analyzed each of the factors contained in R.C. 3109.051(D). In doing so, the juvenile court found that many of the applicable factors weighed in favor of Father. Specifically, the juvenile court found that while Father is bonded and attached to A.B., Mother's interaction with the child was limited and Mother had missed opportunities to visit with A.B. Moreover, the juvenile court noted that while both parents could provide A.B. with a

safe living environment, there was an unresolved issue with the criminal investigation, and Mother had yet to clear her name. The juvenile court also found that A.B. had adjusted to life in Father's home and that, unlike Mother, there was no evidence Father had any mental or physical health issues.

{¶ 23} The juvenile court further found that while Mother desired equal parenting time with Father, or alternatively, standard parenting time, the facts of the case warranted a deviation as outlined by the magistrate. According to the juvenile court, "[r]eason still exists for [Mother] to have only supervised parenting time with the child[,]" including "questions unanswered as to the perpetrator of the sexual abuse" upon A.B.

{¶ 24} Mother first argues that the juvenile court improperly concluded that Mother's visitation should remain supervised due to "abuse involving the discovery of semen from an unknown perpetrator." Mother claims the evidence presented provided several other opportunities where the abuse could have occurred from others, and due to the discovery of semen, Mother faces a "biological hurdle" to be the perpetrator. However, as the juvenile court found, the evidence of semen "certainly does not eliminate the possibility of involvement" by Mother. Rather, the record reflects that through his investigation, the investigator was able discern that Mother was the only individual who was alone with the child the day of the incident, and that he had concerns with eliminating Mother as a suspect, despite the presence of semen in A.B.'s mouth. According to the record, Mother was the only individual the investigator had remaining concerns about. Additionally, the investigator testified that Father was eliminated as a suspect, and that he had no concerns with Father. This conclusion was reinforced by the guardian ad litem and A.B.'s caseworker. Conversely, after observing Mother, the investigator and juvenile court raised questions regarding her credibility, and the guardian ad litem and caseworker had lingering concerns with her potential involvement in the abuse of A.B.

{¶ 25} The record also reflects that Mother has not taken any steps to eliminate herself as a suspect in the investigation, as she has not followed up with the investigator since the legal custody determination. However, it is evident that Mother was aware that CPS would not recommend unsupervised visitation with A.B. unless Mother was cleared as a suspect in the criminal investigation. Notably, Mother does not dispute that she has not been excluded as a suspect in the criminal investigation. In light of this fact, we find the record supports the juvenile court's finding that Mother's attitude and behavior toward the criminal investigation is reason for concern and supports the determination that supervised visitation is in A.B.'s best interest.

{¶ 26} Mother next argues the juvenile court failed to properly acknowledge the completion of services that Mother made in the case. Specifically, Mother claims the juvenile court failed to acknowledge that she had finished parenting classes successfully; she had adequate income and housing; the flexibility of her work schedule; and that she was in counseling and taking her prescribed psychotropic medication. However, the record reflects that the juvenile court considered the progress identified by Mother, but found that A.B.'s bond, stability, and safety while with Father were of greater weight. Additionally, the record reflects that although Mother made progress on the case plan services, she has missed visits with A.B., and failed to utilize additional visitation time Father agreed to make available. As such, Mother has presented no evidence that increased unsupervised visitation would be in A.B.'s best interest, or that she would take advantage of such visitation if it were awarded. Therefore, we find no error in the juvenile court's weighing of the best interest factors under R.C. 3109.051(D), and find that its determination is adequately supported by the record.

{¶ 27} Finding no error in the juvenile court's decision, Mother's argument that the juvenile court abused its discretion in denying her motion for additional unsupervised parenting time lacks merit. Accordingly, Mother's assignment of error is overruled.

{¶ 28} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.